IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3113-FL

| | |
|---|---|
| TIMOTHY MCKOY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CHRISTOPHER BATTEN; GUY BEST; ) | |
| WESTERN SURETY COMPANY; and ) | |
| JOHNS AND JANES DOE, ) | |
| ) | |
| Defendants. ) | |

The matter comes before the court on the motion for summary judgment (DE # 11) pursuant to Federal Rule of Civil Procedure 56 filed by defendants Christopher Batten ("Batten"), Guy Best ("Best"), and Western Surety Company ("Western Surety"), to which plaintiff responded and defendants replied. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion.

## STATEMENT OF THE CASE

Plaintiff, through counsel, filed this complaint against Batten, Best, Western Surety,[1] and other unnamed defendants in the General Court of Justice Superior Court Division, Columbus County, North Carolina, alleging both federal and state law claims. Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 against Batten and unnamed defendants, in their official capacities, for allegedly violating plaintiff's rights pursuant to the Eighth Amendment to the United States Constitution by

---

[1] Plaintiff alleges that Western Surety "is . . . the holder of a surety bond for Defendant Christopher Batten, and Defendant Officer Guy Best, and Defendants Johns and Janes Doe." Compl. p. 2.

placing plaintiff in a non-handicap accessible cell on the second floor of the Columbus County Jail ("the jail"). Plaintiff also alleges that Best and Batten, in their official capacities, violated plaintiff's constitutional rights pursuant to § 1983 when Best affixed handcuffs "injuriously tightly." In addition to his federal claims, plaintiff alleges several North Carolina state tort claims against Batten, Best, and the unnamed defendants. Finally, plaintiff alleges that Batten and Best violated N.C.G.S. § 162-55,[2] and that Batten is liable pursuant to the theory of respondeat superior.

On June 28, 2010, defendants filed a notice of removal, seeking to remove the action to the United States District Court for the Eastern District of North Carolina. Following removal, Batten, Best, and Western Surety filed a motion for summary judgment arguing that they did not violate plaintiff's constitutional rights. Defendants also assert that plaintiff's state law claims are meritless. The matter has been fully briefed.

## STATEMENT OF FACTS

The facts seen in the light most favorable to plaintiff are as follows. On November 28, 2007, plaintiff turned himself into the jail in response to a probation violation for failure to pay probation-related fees. Plaintiff's probation stemmed from his convictions for driving with a revoked license, which stemmed from a citation for failure to use a child seat. Plaintiff was sentenced to forty-five (45) days in jail for his parole violation. Batten was employed as the Sheriff of the Columbus County Sheriff's Department ("the department") during this time.

---

[2] NC Gen. Stat. § 162-55 provides: "If the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class 1 misdemeanor."

Upon entering the jail, plaintiff informed staff that he was awaiting surgery for a painful hip condition and that he was taking pain medication.[3] Plaintiff subsequently was assigned a non-handicap accessible cell on the second floor, requiring plaintiff to use the stairs to get to his cell several times per day. At the time of plaintiff's incarceration, the jail had eight handicap accessible cells. At least one inmate occupying one of these cells offered to relocate for plaintiff's benefit, but the request was denied pursuant to the detention center's policy that handicap accessible cells were reserved for inmates using wheelchairs, crutches, or requiring some other assistance to ambulate.

On November 29, 2007, plaintiff filed a sick call request, but refused to see medical staff the next day. Around December 10 or 11, 2007, plaintiff complained that he needed shots for his leg, but was given only aspirin and ibuprofen. Plaintiff's cellmates asked the jail staff to provide plaintiff with a handicap accessible cell and shots to ease his pain, but officers denied their requests.

On December 15, 2007,[4] plaintiff complained of pain in his hip, leg, and knee and asked to go to the hospital. Plaintiff also complained of shortness of breath and swelling in his hands and feet, especially his left wrist. Late that night, Best and another officer accompanied plaintiff to the hospital. Prior to leaving the jail, Best placed handcuffs on plaintiff's right wrist and Officer Melvin Brown handcuffed plaintiff's left wrist. Best informed Brown that the handcuffs on plaintiff's left wrist were not tight enough. Brown disagreed and did not adjust plaintiff's left handcuff. Upon entering the transport vehicle, plaintiff informed Best that his right handcuff was too tight and painful. Plaintiff again complained that his right handcuff was too tight when the transport vehicle

---

[3] Plaintiff had a previous hip surgery in 2004.

[4] The complaint alleges that plaintiff went to the hospital on December 14, but plaintiff testified that it was December 15 and this is consistent with the jail's records. McKoy Dep. pp. 45, 77; and Ex. 7.

3

was a few blocks from the jail. Despite his complaints, plaintiff's right handcuff was not removed or adjusted.

At the hospital, plaintiff received some Percocet and a shot for his pain leg/hip pain. Plaintiff complained to the nurse about his wrist pain, but the nurse responded that "there [was] nothing she could do about it." McKoy Dep. p. 50.

When plaintiff returned to the jail, a little after 4:00 a.m.,[5] an officer noticed that his right wrist was larger than his left. Defendants would not return him to the hospital despite the fact that he was experiencing considerable swelling in his right wrist.

On December 18, 2007, plaintiff was seen by the jail's nurse, Asterio R. Basobas, who noted plaintiff was complaining of pain in his neck, left leg, and left hip. Plaintiff additionally asked the nurse to note that he had swelling in his right wrist as a result of being handcuffed for his hospital visit. Plaintiff saw the nurse the next day and informed the nurse that his pain medication had worked well. Basobas Aff. ¶ 12.[6] Thereafter, on December 22, 2007, plaintiff was released early from jail.

After leaving the jail, plaintiff immediately went to Whiteville Urgent Care for treatment of his wrist. Plaintiff's treating physician referred plaintiff to Dr. Kevin Scully at Atlantic Orthopedics. Plaintiff subsequently attended an appointment with Dr. Scully who diagnosed plaintiff with potential scaphonlunate dissociation, but informed him that it was unlikely that any injury was caused by the handcuffs. Plaintiff later saw Dr. Richard Bahner of Atlantic Orthopedics.

---

[5] The court notes that Best testified that he returned to the jail with plaintiff at approximately 2:15 a.m. See Best Dep. p. 14.

[6] Asterio Basobas, LPN submitted an affidavit in support of defendants' motion for summary judgment.

4

In 2008, plaintiff had two surgeries to his wrist, and alleges that he presently has no movement in his right wrist. Dr. Bahner states the following regarding plaintiff's wrist: "[Plaintiff's] right wrist has sustained some type of injury at some point. It is impossible to determine when but usually the arthritic changes that he has suffered have some type of traumatic event associated with them or can occur over a long period of time. . . . I do concede to him that abnormal constriction such as handcuffing can cause problems with neuritis or tendinitis and those events normally resolve or recede with time but not always." Def.'s Mem. Ex. A.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Plaintiff's claims against Batten and Best are against them in their official capacities only and are treated as an action against the department as an entity. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004); see Massasoit v. Carter, 439 F.

5

Supp. 2d 463, 480 (M.D.N.C. July 12, 2006), aff'd 253 Fed. Appx. 295 (4th Cir. Nov. 15, 2007). A local government entity cannot be held liable under § 1983 on a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). Instead, to establish liability of the government entity, a plaintiff must demonstrate that (1) a government actor deprived the plaintiff of her federal rights, and (2) the harm was the result of an official policy or custom of the local entity. Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003).

A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so "persistent and widespread" as to constitute a custom or usage with the force of law. Lytle, 326 F.3d at 471 (citations and quotations omitted).

1. Handicap Accessible Cell

    a. Violation of a Constitutional Right

In evaluating plaintiff's official capacity claim, the court first determines whether plaintiff's constitutional rights were violated when he was not placed in a handicapped accessible cell. The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement and to "take reasonable measure to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotation omitted). In order to establish an Eighth Amendment violation relating to conditions of confinement, a prisoner must establish both (1) "a serious deprivation of a basic human need," and (2) "deliberate indifference to a prison condition on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Additionally, the inmate must "produce

6

evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Id. at 1381.

In an effort to satisfy the first prong of the Eighth Amendment test–a serious deprivation of a basic human need--plaintiff asserts that he suffered pain when he was forced to use the stairs and was prevented from walking to the first floor for meals or recreation. The court recognizes that the "unnecessary and wanton infliction of pain" alone suffices to form an injury severe enough to be cognizable under the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). Thus, plaintiff's allegations are sufficient to support the first prong of the Eighth Amendment test.

The court now turns to the second prong--whether Batten acted with deliberate indifference to his prison conditions. In Farmer, the Supreme Court held that "deliberate indifference" refers to the prison official's subjective state of mind, requiring proof that the prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. A showing of mere negligence does not qualify as deliberate indifference. See Davidson v. Cannon, 474 U.S. 344, 347 (1986); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

In this case, the record reflects that the jail's policy provided handicapped accessible cells to inmates requiring assistance to ambulate. Plaintiff, however, did not fit within the jail's policy because he walked into the jail unassisted. Further, plaintiff has not presented any evidence to

7

demonstrate why a handicap accessible cell was necessary. Rather, it appears from the record that a first floor non-handicapped cell assignment satisfied plaintiff's needs.[7] Because plaintiff has not demonstrated a need for a handicapped accessible cell, he is unable to establish that a prison official knew of and disregarded an excessive risk to his health or safety.[8] Based upon the foregoing, the court finds that plaintiff failed to satisfy the second prong of the Eighth Amendment test for this claim. Thus, the court finds that there is no Eighth Amendment violation.

      b.      Whether Harm was the Result of Official Policy or Custom

Because there is no underlying constitutional violation, plaintiff's claim regarding the department's handicap accessible cell policy fails. See, e.g., City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Waybright v. Frederick County, 528 F.3d 199, 209 (4th Cir. 2008).

Even if plaintiff could establish a constitutional violation, his claim still fails because plaintiff has not established that the department's policy of reserving its eight handicap accessible cells for inmates using wheelchairs, crutches, or some other assistance to ambulate resulted in deliberate indifference to his prison conditions. Specifically, plaintiff has not established the requisite causal link between the department's policy regarding handicap accessible cells and plaintiff's injury. See Bd. of Cnty Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 397 (1997) ("A municipality may not be liable under § 1983 solely because it employs a tortfeasor. . . . Instead, the plaintiff must identify a municipal 'policy' or 'custom' that caused the injury.").

---

[7] The court notes that plaintiff obtained a first floor cell assignment ten (10) days after his arrival at the jail.

[8] The court notes that plaintiff's claim is limited to his allegation that the department's policy governing the provision of handicap accessible cells violated his constitutional rights. Accordingly, the court expresses no opinion as to whether any individual jail official violated plaintiff's constitutional rights by failing to provide him with a first floor cell placement.

8

In particular, as stated, the record is devoid of evidence that plaintiff required a handicap accessible cell, as opposed to a regular cell on the first floor. Additionally, to the extent any violation occurred, it would be attributable to the jail officials who managed cell assignments. Batten may not be held liable for such defendants' conduct through a theory of respondeat superior. See Monell, 436 U.S. at 690-91; see also Hasler v. Mergerman, 104 F.3d 178, 180 (8th Cir. 1997) (citations omitted). Based upon the foregoing, the court finds that plaintiff has not demonstrated that defendants, in their official capacities, violated his Eighth Amendment rights.

2. Handcuff Application

a. Violation of a Constitutional Right

Plaintiff alleges that Best and Batten violated his constitutional rights when Best applied handcuffs too tightly to plaintiff's wrists in violation of the Eighth Amendment. The court first determines whether there was a constitutional violation.

In a claim for excessive application of force, a claimant must meet a heavy burden to satisfy the subjective component. See Whitley v. Albers, 475 U.S. 312, 320-21 (1986). He must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. Id. (internal quotation marks omitted). The objective component of an excessive force claim is not as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,] whether or not significant injury is evident." Wilkins v. Gaddy, __ U.S. __, __, 130 S.Ct. 1175, 1178 (2010) (internal quotation marks and ellipsis omitted).

The court begins with the objective prong of the Eighth Amendment test. The parties dispute whether plaintiff suffered any injury due to Best's application of handcuffs to his right wrist. Plaintiff

9

alleges that Best's conduct resulted in two surgeries and virtual immobility in his right wrist. Defendants dispute that Best's handcuffing caused plaintiff's injuries and contends that his injuries are the result of a preexisting degenerative condition. However, plaintiff presented an affidavit from the jail's Officer Sheila Lauvedia Banks stating that she observed plaintiff's wrist both prior to and subsequent to his handcuffing on the evening of December 14, 2008, and that "his right wrist and hand were swollen to approximately twice their normal size" on December 15, 2008. Banks Aff. ¶ 10. Moreover, Dr. Richard Bahner examined plaintiff's wrists and diagnosed him with right wrist de Quervain's tenosynovitis and advanced midcarpal arthritis. Dr. Bahner opined that "abnormal constriction such as handcuffing can cause problems with neuritis or tendinitis and those events normally resolve or recede with time but not always." Def's Mem. Ex. A. Based upon the foregoing, there is a genuine issue of material fact with regard to whether plaintiff suffered injury subsequent to being handcuffed by Best on December 14, 2008. Therefore, plaintiff is able to satisfy the objective prong of the Eighth Amendment test.

The court next determines whether plaintiff is able to satisfy the subjective prong of the Eighth Amendment test. To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In a claim for excessive force, that state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. The United States Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with 'wantonness': (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts

made to temper the severity of a forceful response.'" Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (quoting Whitley, 475 U.S. at 321).

Applying the foregoing factors to this case, the court finds that the first factor weighs in favor of a finding that Best did not act with wantonness in the infliction of pain due to the fact that the use of restraints upon an inmate generally is appropriate when transporting them outside of a jail or prison. Hasler, 104 F.3d at 180. The use of restraints additionally has been found reasonable during a hospital visit in order to prevent any attempts at escape. Id.

Regarding the remaining factors used to determine whether Best used wantonness in the infliction of pain, the record reflects that plaintiff complained to Best regarding the tightness of his handcuffs from the time he left the jail for the hospital, at approximately 11:00 p.m., until his return at approximately 4:00 a.m. The evidence, however, is not dispositive of Best's intent with regard to the tightness of the handcuffs. Rather, the evidence additionally reflects that plaintiff was examined at the hospital, and that no doctor or nurse noticed any injury to plaintiff.[9] Further, Best noted plaintiff's concern once the handcuffs were removed and expressed "sorriness." McKoy Dep. p. 75; Def.s' Mem. in Supp. of Summary J. Ex. A. Based upon this evidence, it appears that Best realized the extent of plaintiff's discomfort when he removed the handcuffs and that he was remorseful. This is not sufficient to establish that Best's application of the handcuffs was done maliciously and sadistically to cause harm. See Whitley, 475 U.S. at 319 ("The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was

---

[9] The court notes that plaintiff did not complain to a doctor about the tightness of his handcuffs. McKoy Dep. pp. 49-50. Plaintiff did complain to a nurse, who informed him that "there [was] nothing she could do about it." Id. ¶ 50.

Case 5:10-ct-03113-FL Document 27 Filed 07/06/12 Page 11 of 15

unreasonable, and hence unnecessary in the strict sense."). Thus, plaintiff is not able to satisfy the subjective prong of the Eighth Amendment test, and there is no constitutional violation.

        b.     Whether Harm was the Result of Official Policy or Custom

Because there is no underlying constitutional violation, plaintiff's claim regarding the department's failure to train its employees on the application of handcuffs fails. See, e.g., City of Los Angeles, 475 U.S. at 799; Waybright, 528 F.3d at 209.

Even if plaintiff could establish a constitutional violation, his claim still is meritless because he is unable to establish that the alleged violation of his constitutional rights–excessive force–resulted from the department's failure to adequately train its deputies on the application of handcuffs. A Sheriff's department may be liable for the failure to train its employees only where such failure "reflects 'deliberate indifference' to the rights of its citizens." Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Deliberate indifference may be found where "in light of the duties assigned to specific officers or employees, the need for more or different training is . . . obvious, and the [failure to train] is likely to result in the violation of constitutional rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994) (quoting Harris, 489 U.S. at 390). " 'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd of Cty Comm'rs of Bryan Cty., Okl., 520 U.S. at 410. Moreover, for liability to attach, a plaintiff must establish a "direct causal link" between "a specific deficiency in training and the particular violation alleged." Buffington v. Baltimore County, 913 F.2d 113, 122 (4th Cir. 1990). It does not "suffice to prove that an injury . . . could have been avoided if an officer had better or more training, sufficient

12

to equip him to avoid the particular injury-causing conduct" because "[s]uch a claim could be made about almost any encounter." Harris, 489 U.S. at 391.

A pattern of similar constitutional violations by untrained employees ordinarily is necessary to demonstrate deliberate indifference for purposes of failure to train. Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011). Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Id. Here, plaintiff has not alleged a pattern of the department's employees applying handcuffs inadequately. Rather, plaintiff relies only upon the incident currently before the court.

In a narrow range of circumstances, however, a pattern of similar violations might not be necessary to show deliberate indifference. Connick, 131 S.Ct. at 1361. A single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability. Bd of Cty. Comm'rs of Bryan County, Okl., 520 U.S. at 409. For instance, the need to train officers in the constitutional limitations on the use of deadly force may be "so obvious" that failure to do so would constitute "deliberate indifference" to constitutional rights. Harris, 489 U.S. at 390 n. 10.

In this case, plaintiff has not shown any specific training deficiencies or a pattern of unconstitutional conduct. Instead, the record reflects that, although there is no specific policy regarding the tightness of handcuffs, officers generally make sure that they can place the end of their finger between the inmate's wrist and the handcuff to ensure that the handcuff is not too tight. Batten Dep. p. 11. Further, although there is no ongoing training program for handcuffing, officers

13

participate in basic law enforcement training and detention officer courses on how to properly handcuff inmates. Id. p. 12. Additionally, there is no evidence that there are any other inmate complaints regarding Best's application of handcuffs. Id. pp. 12-13.

Based upon the foregoing, the court finds there is no direct causal link between the alleged Eighth Amendment violation and the department's current policies and training concerning handcuffing inmates. Further, unlike the constitutional limitation on deadly force, the need for additional training under the circumstances of this case are not so obvious as to constitute deliberate indifference. Thus, defendants are entitled to summary judgment for this official capacity claim.

3.  Supplemental Jurisdiction

Plaintiff alleges several negligence-related state law claims. A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). The court has dismissed plaintiff's § 1983 claims, which were the sole claims over which it had original jurisdiction. In the interest of judicial economy, fairness, and comity, the court will not exercise supplemental jurisdiction over plaintiff's state law negligence claims. Thus, plaintiff's state law negligence claims are dismissed without prejudice.[10]

---

[10] Pursuant to 28 U.S.C. § 1367(d), the state statute of limitations period shall be tolled for a period of at least thirty (30) days after dismissal. Estate of Manook v. Research Triangle Institute, Intern, No. 5:10-CV-72-D, 5:10-CV-73-D, 2010 WL 3199874, at *5 (E.D.N.C. Aug. 12, 2010); Coleman v. Smith, No. 3:08-3675-JFA, 2010 WL 569662 at *4 n.3 (D.S.C. Feb. 11, 2010); Futick v. Mills, No. 4:08-1749-CMC-TER, 2008 WL 5378266, at *1 (D.S.C. Dec. 24, 2008); but see, Katema v. Midwest Stamping Co., 180 Fed. Appx. 427, 428 (4th Cir. 2006) (finding that the district court abused its discretion in declining to exercise its supplemental jurisdiction under § 1367 because plaintiff's state law claims would be time-barred in state court and because the court had diversity jurisdiction over plaintiff's claim.).

14

4. The Unnamed Defendants

John or Jane Doe suits are not favored in the federal courts. See, e.g., Chidi Njoku v. Unknown Special Unit Staff, No. 99-7644, 2000 WL 903896, at *1 (4th Cir. July 7, 2000) (per curiam). A court should dismiss a John or Jane Doe suit without prejudice when it does not appear that the plaintiff will be able to identify the true identity of the defendant " 'through discovery or through intervention by the court.' " Id. (quoting Schiff v. Kennedy, 691 F.2d 196, 198 (4th Cir. 1982)). A plaintiff who seeks to proceed against unidentified defendants must still "provide an adequate description of some kind which is sufficient to identify the person involved so that process can be served." Dean v. Barber, 951 F.2d 1210, 1216 (11th Cir. 1992) (quotation omitted); Williams v. Burgess, No. 3:09-CV-115, 2010 WL 1957105, at *2 (E.D. Va. May 13, 2010). In this case, plaintiff failed to provide sufficient information to identify the unnamed defendants. Accordingly, they are DISMISSED from this action without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 11) is GRANTED. Plaintiff's claims against the unnamed defendants are DISMISSED without prejudice. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 7th day of July, 2012.

LOUISE W. FLANAGAN
United States District Judge

15

Case 5:10-ct-03113-FL Document 27 Filed 07/06/12 Page 15 of 15